**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

**Katharine Edwards, OSB No. 173393**
attorney@kedwards-law.com
**LAW OFFICE OF KATHARINE EDWARDS**
P.O. Box 417
Hillsboro, Oregon 97123
Telephone: (503) 908-3589

   Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **ZERA LOLA ZOMBIE**, | **Case No.** 3:21-cv-01338 |
| **PLAINTIFF**, | **COMPLAINT** |
| v. | (42 U.S.C. §1983; Negligence) |
| **STATE OF OREGON, JOSH HIGHBERGER, BRANDON KELLY, ROBERT ADAMSON, TOBY TOOLEY, MALCHOLM BARTH, CLAYTON BORDEN, GARY ALVES, MARTIN WILLIAMS, STEVEN NEWELL, WADE TRYON, WILLIAM SNYDER, C/O PARKER, JAMIE BREYMAN, KAREN RHOADES, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,** and **JOHN DOE 4** | JURY TRIAL DEMANDED |
| **DEFENDANTS**. | |

Plaintiff Zera Lola Zombie alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Zera Lola Zombie brings this action under 42 U.S.C. § 1983 against the named defendants' actions for (1) discriminating against Ms. Zombie on the basis of her gender and gender identity; (2) housing Ms. Zombie, a female, in a men's prison; (3) failing to follow both federal and Oregon rules and laws concerning the designation and protection of Ms. Zombie as a Vulnerable Adult-In-Custody ("AIC") at high risk for both physical and sexual assault; (4) assigning Ms. Zombie to share a cell with a known sexual predator serving an approximately 40-year sentence for violent sex crimes against women, and failing to respond to Ms. Zombie's complaints of frequent physical and sexual assaults by her cellmate; (5) failing to provide legally-mandated counseling and Prison Rape Elimination Act (PREA) protections; and (6) failing to follow federal and Oregon laws and rules regarding sexual assault reporting and investigations and thereby subjecting Ms. Zombie to retaliation and further harm.

2.      Ms. Zombie is a transgender woman currently in the custody of Oregon Department of Corrections ("ODOC") at Coffee Creek Correctional Facility ("CCCF"). Until September 2, 2021, Ms. Zombie was housed at Oregon State Penitentiary ("OSP"), and prior to that, Oregon State Correctional Institution ("OSCI"), both men's prisons. Ms. Zombie's gender is legally recognized as "female" and she is classified in ODOC's records as female.

3.      Ms. Zombie has suffered ongoing harassment and verbal, mental, and psychological abuse by both prisoners and ODOC staff as a result of her sex, gender, and gender identity. Ms. Zombie was physically assaulted twice on October 9, 2020, by prisoner Allen Howard as a result of ODOC/OSP staff failure to protect her. Ms. Zombie was assigned to share a cell with Mikal Shabazz, a prisoner known to ODOC to have a history of violent sexual

assaults against women and from April 2020 to May 2021, Ms. Zombie suffered numerous and frequent physical and sexual assaults by Shabazz, sometimes on a daily basis. Ms. Zombie alerted ODOC/OSP staff of the abuse on at least two occasions and ODOC/OSP staff failed to protect her. During the course of ODOC's investigation into the sexual assaults, ODOC/OSP staff allowed Shabazz to leave disciplinary segregation despite the known threat to Ms. Zombie. Despite Ms. Zombie's reports of sexual assault, Defendants failed to provide timely, proper, or confidential counseling as required by PREA.

4.      Defendants are individuals who, during the time of Ms. Zombie's incarceration, have had authority and responsibility for her treatment, safety, and care.

5.      Ms. Zombie has fully exhausted her available administrative remedies.

6.      Ms. Zombie seeks equitable relief, compensatory and punitive damages, as well as attorney fees and costs as set forth below.

## JURISDICTION

7.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, federal question jurisdiction, and pursuant to 28 U.S.C. §1343(a)(3) and (4), civil rights jurisdiction.

8.      Venue is in the District of Oregon pursuant to 28 U.S.C. §1391(b) because the claim arose in this Judicial District and all Defendants are employed by ODOC in CCCF, OSP, or OSCI, which are located in Washington and Marion Counties, respectively.

## PARTIES

9.      Plaintiff is a citizen of the United States. At all times material, Plaintiff was incarcerated in the custody of ODOC and housed at OSP, OSCI and CCCF. Plaintiff is a female person who was previously regarded as being a male person.

10.      Defendant State of Oregon operates the Oregon Department of Corrections

(ODOC) which owns, staffs, and operates OSCI, OSP and CCCF.

11.    Josh Highberger is the Superintendent of OSCI.

12.    Brandon Kelly is the Superintendent of OSP.

13.    Robert Adamson is a correctional officer and PREA Coordinator at OSP.

14.    Toby Tooley is the PREA Compliance Manager at OSP.

15.    Malcholm Barth is a correctional officer at OSP.

16.    Clayton Borden is a correctional officer at OSP.

17.    Gary Alves is a correctional officer at OSCI.

18.    Martin Williams is a correctional officer at OSCI.

19.    Steven Newell is a correctional officer at OSCI.

20.    Wade Tryon is a correctional officer at OSP.

21.    William Snyder is a correctional officer at OSP.

22.    C/O Parker is a correctional officer at OSP.

23.    Jamie Breyman is Administrator of the Office of Population Management and head of the Transgender and Intersex Committee.

24.    Karen Rhoades in Behavioral Health Services Manager at OSP.

25.    John Doe is 1 a correctional officer at OSCI. The identity of John Doe 1 is not known at this time but as discovery is made available this individual will be identified and substituted for John Doe 1.

26.    John Doe 2 is the individual within ODOC who is responsible for evaluating and screening individuals upon their introduction into the prison system to determine their vulnerability for sexual assault/harassment and to determine the safest and most appropriate housing assignment for them. John Doe 2 was an employee of ODOC and had the duty to assess

Plaintiff for vulnerabilities to her safety and appropriate housing assignment at the time of her entry into ODOC. The identity of John Doe 2 is not known at this time but as discovery is made available this individual will be identified and substituted for John Doe 2.

27.    John Doe 3 is the individual working for ODOC/OSP who had a role in assessing Plaintiff's classification and her housing assignments to ensure her protection and safety and to prevent her sexual assault. The identity of John Doe 3 is not known at this time but as discovery is made available this individual will be identified and substituted for John Doe 3.

28.    John Doe is 4 a correctional officer at OSP and was the A-Block officer who ignored the physical assaults that occurred against Plaintiff. The identity of John Doe 4 is not known at this time but as discovery is made available this individual will be identified and substituted for John Doe 4.

29.    At all times relevant, Defendant's employees and supervisors, as their conduct is alleged herein, were acting within the course and scope of their employment with the Defendant.

30.    All defendants are sued in their individual capacity.

## FACTUAL ALLEGATIONS

31.    Plaintiff entered custody of the Defendant Oregon Department of Corrections August 21, 2014.

32.    On or about November 2019, while housed OSCI, Plaintiff was strip-searched in front of male prisoner Lewis Crane by male correctional officer ("CO") Defendant Doe 1, by order of Defendant Alves.

33.    On or about December 2019, Plaintiff was strip-searched by male CO Defendant Barth in an open area and in full view of male prisoners and staff.

34.    On or about December 25, 2019, Plaintiff requested toilet paper from OSCI staff

and was denied by Defendants Newell and Williams. Without toilet paper or other material for toilet hygiene, Plaintiff was forced to use her socks for personal hygiene after using the toilet, and to carry her feces-contaminated socks to laundry to dispose of them in a biohazard bag.

35.     On or about January 31, 2020, while in the facility Maintenance Shop, Defendant Barth loudly referred to Plaintiff and other transgender individuals as "fucking trannies" within view and earshot of other prisoners and staff in the Maintenance Shop.

36.     On or about October 1, 2020, Defendant Parker made hostile and sexually suggestive comments about Plaintiff's genitalia, wondering aloud in front of other prisoners and staff whether Plaintiff had a penis. Defendant Parker further stated that he believed transgender individuals "are all BHS [Behavioral Health Services] cases," and refused to allow Plaintiff to work in the facility furniture shop on the basis of her sex, gender, and gender identity.

37.     On or about October 9, 2020, Plaintiff was physically attacked by prisoner Allen Howard in the OSP Dayroom in plain view of Defendant Doe 4 and OSP staff who ignored the verbal harassment and threats to Plaintiff's physical safety preceding Howard's physical attack against Plaintiff. Defendant Doe 4 and OSP staff further ignored the subsequent physical assault against Plaintiff by Howard. After first verbally harassing Plaintiff with transphobic comments and slurs referring to gender and sexual identity and making threats of violence toward Plaintiff within full view and earshot of OSP staff, Howard punched Plaintiff in the mouth, causing Plaintiff to experience a cut lip, bleeding, bruising, pain, and humiliation.

38.     When Plaintiff retreated from the area and attempted to leave the Dayroom, Howard hid in a hallway and attacked her again, punching her back, sides, and head and causing pain, bruising, bleeding, swelling, and fear.

39.     Neither Defendant Doe 4 nor OSP staff intervened in either attack on Plaintiff by

Howard.

40.     On or about December 26, 2020, Plaintiff formally requested transfer to CCCF, the only women's prison in Oregon, as Plaintiff was a woman housed in a men's prison. Plaintiff's gender is listed as "Female" in ODOC records. Plaintiff has since made numerous requests to OSP staff, Defendant Bray, and the ODOC Transgender and Intersex Committee (TAIC)1 to be moved to CCCF.

41.     Plaintiff's move to CCCF was denied or delayed despite ongoing physical, sexual, and psychological harm to Plaintiff and she remained at OSP until September 2, 2021.

42.     Defendant Tryon has repeatedly refused to use female gender pronouns to refer to and address Plaintiff. On or about March 3, 2021, Defendant Tryon deliberately and maliciously misgendered Plaintiff. Plaintiff filed a grievance regarding Defendant Tryon's deliberate misgendering, which OSP found substantiated.

43.     Until May 2021, Plaintiff was forced to shower with male prisoners, subjecting her to verbal and physical harassment, sexual comments about her naked body, threats of sexual violence, and male prisoners openly and visibly masturbating while watching Plaintiff shower.

44.     On numerous occasions during her time in ODOC custody, Plaintiff has been called "faggot," "tranny," and other derogatory names by ODOC staff, and repeatedly misgendered by ODOC staff.

45.     Defendants' demeaning, cruel, violent treatment of Plaintiff because of her transgender status is ongoing.

46.     From approximately March 2020 until June 2021, Plaintiff was housed at OSP in a cell with prisoner Mikal Shabazz, who is currently serving an approximately 40-year sentence

---

1 Upon information and belief, the Transgender and Intersex Committee reviews and makes housing placements for transgender (and other gender-nonconforming) prisoners.

for multiple counts of, among other violent convictions, rape and sexual assault against women.

47.     Upon information and belief, Shabazz has been involved in previous sexual assaults against transgender women while in custody at OSP, including a former cellmate.

48.     Despite Plaintiff's vulnerability as a transgender woman, ODOC assigned her to be celled with a known sexual predator.

49.     AIC Shabazz forced Plaintiff to submit to a non-consensual "relationship" with him, which included frequent forced sexual activity, violence, psychological abuse, and threats of further harm. Plaintiff was afraid of Shabazz if she refused, and also afraid that other prisoners would harm her if she angered Shabazz.

50.     Between approximately March 2020 and June 2021, Plaintiff was sexually and physically assaulted by AIC Shabazz regularly and often, sometimes daily.

51.     As a result of the numerous and frequent sexual and physical assaults, Plaintiff has suffered physical injuries and emotional trauma.

52.     Around December 2020, Plaintiff showed a note to Defendant Adamson, which was written to her by Shabazz. In the note, Shabazz stated that he had only allowed Plaintiff to live in his cell for "one reason," alluding to the forced sexual "relationship" and that if she would not submit that Plaintiff would need to find another place to live. Defendant Adamson told Plaintiff that her only other option would be to move into an open cell on "main line" where she would be more vulnerable to attacks by other prisoners.

53.     Despite her report of unwanted sexual activity to Defendant Adamson, Defendant Adamson took no action to protect Plaintiff from Shabazz.

54.     In March 2021, Shabazz attempted to violently force Plaintiff to submit to unwanted sexual activity and she had to physically fight him off.

55.     On or about May 20, 2021, Shabazz attempted to violently force Plaintiff to submit to unwanted sexual activity and she had to physically fight him off. After she physically fought him off, Shabazz told Plaintiff that if she refused to submit to his demands of sexual activity, then she had to move out of the cell.

56.     On or about May 20, 2021, Plaintiff again reported to Defendant Adamson that Shabazz was forcing her to have a non-consensual "relationship" with him in exchange for living in his cell and Defendant Adamson responded by telling Plaintiff that she "[would] get over it." Defendant Adamson did not take action to protect Plaintiff from Shabazz.

57.     On or about July 2, 2021, Plaintiff filed a tort claim notice regarding Defendant Adamson and OSP's failure to protect her from the physical and sexual abuse by Shabazz, prompting OSP to commence a formal PREA investigation, including reporting Plaintiff's allegations to Oregon State Police.

58.     Defendant confined Shabazz to the Disciplinary Segregation Unit (DSU) when the PREA investigation began, but only a few days later, Defendant began allowing Shabazz to leave DSU each day to attend his prison employment despite the risk to Plaintiff's safety and wellbeing.

59.     Immediately after Shabazz was allowed to begin leaving DSU during the active PREA investigation, Plaintiff began suffering harassment and threats by other prisoners for "snitching" and "being a rape rat." When she attempted to go to the chow hall, Plaintiff was approached by a group of prisoners who threatened Plaintiff with bodily harm if she returned to the chow hall as a result of her reporting the assaults by Shabazz.

60.     On multiple occasions, Plaintiff encountered Shabazz in the prison while he was allowed to leave DSU for work, causing her to be re-traumatized and experience fear, anxiety,

and mental anguish.

61.      After Plaintiff reported the sexual assaults by Shabazz, ODOC/OSP staff failed to provide sexual assault counseling or proper confidential access to a PREA advocate as required. On two occasions, Plaintiff was given the opportunity to contact a PREA advocate but only with OSP staff in the room with her, preventing any confidentiality.

62.      On or about August 27, 2021, Plaintiff was assaulted and groped by AIC Nikita Sellnick while on the OSP recreation yard. On multiple occasions during the prior year, Plaintiff had complained to OSP staff about Sellnick's sexually assaultive and predatory behavior. Lieutenant Cynthia Porter advised Plaintiff that same night that she had appropriately investigated and confirmed Plaintiff's allegations with camera footage.

63.      On or about August 28, 2021, Defendant Snyder approached Plaintiff on the recreation yard and demanded to know what had happened between Plaintiff and Sellnick that caused Sellnick to go into disciplinary segregation, in full view and earshot of multiple other prisoners, violating both Plaintiff's privacy and PREA confidentiality rules, as well as making Plaintiff more vulnerable to retaliation by other prisoners for reporting Sellnick's behavior.

64.      After the assault by Sellnick, ODOC/OSP staff failed to provide access to a PREA advocate as required.

65.      Plaintiff continues to suffer psychological trauma, anxiety, and mental anguish as a result of the physical, mental, and sexual abuse she has experienced while in ODOC custody.

///

///

## COUNT I

**(42 U.S.C. § 1983 – 14th Amendment – Equal protection)**

**(Against Defendants ODOC, Highberger, Kelly, Barth, Borden, Alves, Williams, Newell, Parker, Tryon, Breyman, Doe 1, Doe 2, Doe 3, and Doe 4)**

66.     Plaintiff re-alleges all relevant paragraphs as though fully restated herein.

67.     As a result of Defendants' conduct as alleged above, Defendants violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

68.     Defendants Highberger and Kelly allowed discriminatory and abusive practices toward Plaintiff by staff based on Plaintiff's sex, gender, and gender identity.

69.     Defendants Doe 2 and Doe 3 failed to properly identify and classify Plaintiff as a Vulnerable AIC and forced her, a transgender female, to be housed in men's prisons where she would foreseeably be subjected to abuse and discrimination.

70.     Defendants Barth, Border, Alves, Williams, Newell, Parker, Tryon, Doe 1, and Doe 4 treated Plaintiff in a manner that was discriminatory and abusive on the basis of her sex, gender, and gender identity.

71.     Defendant Breyman failed to properly transfer Plaintiff to a women's prison despite documented abuse at OSP on the basis of her sex, gender, and gender identity.

72.     As a result of the Defendants' violation of Plaintiff's Constitutional rights, Plaintiff suffered contusions, a split lip, as well as severe physical and mental pain and suffering from Defendants' abusive and discriminatory behavior.

73.     The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the

equal protection of the laws." U.S. Const. amend. XIV, § 1.

74.     The individually named Defendants' conduct exposed Plaintiff to violence and discrimination on the basis of sex without protection in violation of her Fourteenth Amendment rights.

75.     The individually named defendants acted with deliberate indifference to Plaintiff's constitutional rights. As a result of defendants' conduct, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress.

76.     Plaintiff is entitled to damages to compensate her for these injuries. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless the Court grants the declaratory and injunctive relief which she seeks.

77.     Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

78.     Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II

**(42 U.S.C. §1983 – Eighth Amendment – Failure to Protect)**

**(Against Defendants ODOC, Highberger, Kelly, Adamson, Tooley, Snyder, Breyman, Doe 2, Doe 3, and Doe 4)**

79.     Plaintiff re-alleges all relevant paragraphs as though fully restated herein.

80.     Plaintiff is entitled to the full protection of the laws including the Prison Litigation Reform Act and the Prison Rape Elimination Act which requires ODOC and defendants to comply with the laws in providing protection from assault including physical

assaults and rape, providing protection to vulnerable prisoners, and to comply with all aspects of intervening and providing a safe environment to Plaintiff.

81.     Defendants violated the Constitutional and statutory rights held by Plaintiff in the following ways:

a.     Defendant Doe 2 failed to provide adequate screening and risk evaluation of Plaintiff upon her entry into ODOC custody;

b.     Defendants Doe 2, Doe 3, Highberger, and Kelly failed to provide adequate screening and risk evaluation of Plaintiff upon her admission to Oregon State Correctional Institution and Oregon State Penitentiary;

c.     Defendants Kelly, Doe 3, Adamson, Tooley, and Breyman failed to properly house Plaintiff to avoid contact with aggressive prisoners such as Allen Howard, Mikal Shabazz, and Nikita Sellnick; Failed to properly protect Plaintiff from aggressive prisoners such as Allen Howard, Mikal Shabazz, and Nikita Sellnick;

d.     Defendant Doe 4 failed to intervene when Plaintiff was attacked by Allen Howard;

e.     Defendants Kelly, Adamson, and Tooley failed to provide and ensure a safe shower environment for Plaintiff;

f.     Defendants Kelly, Doe 3, Adamson, and Tooley failed to properly house AIC Mikal Shabazz by allowing him access to vulnerable prisoners and female prisoners, failing to address Shabazz's historical aggressive predatory sexual practices and not properly segregating Shabazz from vulnerable inmates;

g.     Defendants Kelly, Doe 3, Adamson, and Tooley allowed Shabazz

to be housed with Plaintiff despite Shabbaz's long-standing, well-documented history of sexual predation and predatory sexual practices both outside and inside prison;

        h.    Defendants Adamson and Tooley refused to address Plaintiff's complaints of abuse by Shabazz on at least two occasions;

        i.    Defendants Kelly, Adamson, and Tooley allowed Shabazz to leave DSU during an active PREA investigation where he could further terrorize Plaintiff and spread word of her allegations to other prisoners at OSP, foreseeably risking her safety and wellbeing;

        j.    Defendant Snyder openly discussed Plaintiff's PREA allegations in front of other prisoners and staff in a retaliatory manner; and

        k.    Defendant Breyman repeatedly failed or refused to transfer Plaintiff to a women's prison despite Plaintiff's multiple requests and documented ongoing and repeated abuse and sexual assault as a result of Plaintiff's gender.

82.    The individually named defendants acted with deliberate indifference to Plaintiff's constitutional rights. As a result of defendants' conduct, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress.

83.    Plaintiff is entitled to damages to compensate her for these injuries.

84.    Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

85.    Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

//

## COUNT III

**(42 U.S.C. §1983 – Eighth Amendment – Delay and Denial of Essential Medical Care)**

**(Against Defendants ODOC, Kelly, Adamson, Tooley, and Rhoades)**

86.    Plaintiff realleges all previous paragraphs as if more fully set forth herein.

87.    Plaintiff is entitled to timely and adequate medical/psychological care as part of her Constitutionally guaranteed conditions of confinement pursuant to the 8th Amendment to the United States Constitution. Failure to provide timely and adequate medical care is a violation of the 8th Amendment prohibitions against cruel and unusual punishment. Furthermore, the PREA defines additional mandates for treatment after a sexual assault which is guaranteed to each prisoner.

88.    Plaintiff was denied psychological treatment, counseling, and mental health care as required by state and federal law following her reported rapes and sexual assaults.

89.    Plaintiff is entitled to timely unimpeded access to appropriate mental health evaluation, mental health evaluation including suicide risks, and mental health services follow-up as needed pursuant to federal and state law and the 8th Amendment to the United States Constitution.

90.    Defendants Kelly, Adamson, Tooley, and Rhoades denied Plaintiff mental health evaluations, mental health treatment, confidential access to PREA advocates, and any and all follow-up to address her psychological trauma resulting from the rapes, physical assaults, and psychological abuse and as required by law.

91.    As a result of the failures by defendants herein, Plaintiff suffered ongoing psychological trauma as she was denied treatment she required. Her psychological condition has deteriorated and been exacerbated by the numerous failures of defendants here.

92.    The individually named defendants acted with deliberate indifference to Plaintiff's constitutional rights. As a result of defendants' conduct, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress.

93.    Plaintiff is entitled to damages to compensate her for these injuries.

94.    Defendants' acts were willful and malicious and done with reckless indifference to Plaintiff's protected rights. Defendants should be assessed punitive damages in an amount as fixed by a jury to punish them and to deter such conduct in the future.

95.    Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT IV

### (Negligence)

### (against ODOC)

96.    Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

97.    Defendants knew or should have known that Allen Howard, Mikal Shabazz, and Nikita Sellnick presented a substantial risk to Plaintiff's safety. Because of ODOC's failure to protect Plaintiff, she suffered physical harm and severe physical and mental pain and suffering.

98.    ODOC failed to use reasonable care in housing Plaintiff and protecting her from physical and sexual assaults by other prisoners on the basis of her sex and gender as alleged above. ODOC's conduct was negligent.

99.    Defendant ODOC owes Plaintiff a higher standard of care because of the nature of incarceration. As wards of the State, Defendant ODOC manages all aspects of Plaintiff's daily life and decides with whom she will interact, where he will work, live, sleep, bathe, use the toilet, recreate, etc. Had Plaintiff been a free person, she would have been able to avoid Allen Howard, Mikal Shabazz, and Nikita Sellnick. But as an incarcerated person, defendant ODOC

prevented Plaintiff from being able to take these measures.

100.    Defendant ODOC voluntarily took the custody of Plaintiff under circumstances such as to deprive her of normal opportunities for protection and created a non-delegable duty to ensure that Plaintiff was safe from violence and discrimination on the basis of sex at the hands of other inmates. Defendants failed to meet their obligation to protect Plaintiff from known, obvious and predictable threats to her safety.

101.    ODOC's conduct was unreasonable in light of the risk of harm to Plaintiff. ODOC controlled all aspects of Plaintiff's life. Plaintiff's harms could have easily been prevented if OSP staff had intervened when Allen Howard began making derogatory comments about Plaintiff and threatening to attack her; if Plaintiff was not housed with Mikal Shabazz; if OSP staff had intervened when Plaintiff complained about Shabazz's assaults; and if defendants had not placed a female prisoner in a men's prison without sufficient supervision and protection. This was unreasonable.

102.    As a direct and proximate result of ODOC's negligence, Plaintiff suffered economic harm, physical pain, injuries, and emotional distress. Plaintiff should be fully and fairly compensated for her damages in a sum that is just as determined by a jury.

103.    Plaintiff satisfied the Oregon Tort Claims Act notice requirement by filing Tort Claim notices in December 2020 and July 2021.

104.    Plaintiff is entitled to a prevailing party fee, her costs and disbursements.

## PRAYER FOR RELIEF

Plaintiff prays for the following judgment against Defendants:

A.    A sum which will fully compensate Plaintiff for her physical pain and suffering;

B.    A sum which will compensate plaintiff for her emotional distress;

C.      A sum which will fully compensate plaintiff for her economic losses;

D.      An award of punitive damages;

E.      For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

F.      Equitable relief; and

G.      For such other and further relief as the Court may deem just and equitable.

**Plaintiff demands a trial by Jury.**

Dated: September 10, 2021

LAW OFFICES OF DANIEL SNYDER

s/ John Burgess
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Katharine Edwards, OSB No. 173393
attorney@kedwards-law.com
Of Attorneys for Plaintiff